# CONTRACT

## BETWEEN

## SAN FRANCISCO PRODUCE ASSOCIATON

## AND

## TERMINAL DEALERS ASSOCIATION

## AND

## FREIGHT CHECKERS, CLERICAL EMPLOYEES AND HELPERS UNION LOCAL NO. 856 INTERNATIONAL BROTHERHOOD OF TEAMSTERS

### APRIL 1, 1999 through SEPTEMBER 30, 2002

APPENDIX "A"

This Master Produce Agreement is entered into by the below named Employer members of the Associations and those additional Employers who may hereafter be accepted into membership of the below Associations and adopt this Master Produce Agreement.

### SAN FRANCISCO PRODUCE ASSOCIATION

√ Berti Produce Company
√ George L. Burger Company
√ John DeMartini Company, Inc.
√ Jacobs, Malcolm & Burtt
√ Maffei Produce Company
√ O. Lippi & Company
√ Shamrock Produce Company
√ Washington Vegetable Company

### TERMINAL DEALERS' ASSOCIATION

√ Golden State Produce Company, Inc.
√ Lee Ray Tarantino Company, Inc.
√ J.C. Cheyne Company
  Shamrock Produce Company
√ Carcione's Fresh Produce
√ Franzella Produce Company
√ Vanguard Potatoes & Onions

1999-2002

## SAN FRANCISCO MASTER PRODUCE LABOR AGREEMENT

This MASTER AGREEMENT is made and entered into by and between the SAN FRANCISCO PRODUCE ASSOCIATION AND TERMINAL DEALERS ASSOCIATION, whose individual members party hereto are hereinafter set forth in the Appendix "A", and referred to as the "Employer", and FREIGHT CHECKERS, CLERICAL EMPLOYEES AND HELPERS UNION, LOCAL 856, I.B.T. hereinafter referred to as the "Union".

### SECTION 1.    RECOGNITION AND HIRING

1.1  **Recognition:**  The Employer recognizes the Union as the exclusive representative of the employees covered by this Master Agreement for collective bargaining. As a condition of employment, after thirty (30) days from the effective date of this Agreement or after thirty (30) days from the date an employee is hired, whichever is later, all employees covered by this Master Agreement shall be required to become and remain members of the Union in good standing. The Union agrees that written notice shall be given to the Employer and/or Association holding its Power of Attorney, at least seventy-two (72) hours before any employee is required to be removed from his employment by reason of his failure to become or remain a member of the Union as required by this Section.

1.2  **Hiring New Employees:**  The Employer shall give the Union equal opportunity with all other sources to refer suitable applicants for employment, but the Employer shall not be required to hire those referred by the Union or any other particular source.

1.3  **Preference In Hiring:**  The Employer shall give preference of employment to applicants who have been previously employed in this industry. However applicants so employed shall be on probation during the first three (3) months of work and may be subject to discharge during this period without recourse. No applicant will be preferred or discriminated against by the Employer because of membership or non-membership in the Union.

1.4  **Notification to the Union:**  The following information will be given in writing by the Employer to the Union within seven (7) days from the date of hiring new employees: (1) Name, home address and social security number of employee; (2) date employed and hourly rate of pay.

### SECTION 2.    SUPPLEMENTAL AGREEMENTS

The attached Supplemental Agreements are subject to and controlled by the terms of this Master Agreement and are referred to herein as "Supplemental Agreements" referred to as Supplemental Agreement No. 1 (OFFICE-CLERICAL), Supplemental Agreement No.2 (STREET SALESMAN, PORTERS, STREET CASHIERS AND INVOICE CLERKS), and Supplemental Agreement No. 3 (DRIVERS AND FORKLIFT OPERATORS).

SECTION 16.   PENSIONS-Continued

The Union shall, upon request of the Administrator, be provided with monthly copies of Employer remittance statements in order to verify proper contributions.

16.6   Strikes: Except for where it is proven that an Employer is over sixty (60) days delinquent in pension and /or health and welfare contributions, the Union shall not cause or condone any strike by any of its members against any Employer covered by this Master Agreement.

16.7   Supplemental Pension:   Effective April 2, 1999, each Employer party to this Master Agreement shall make contributions into the Northern California Pension Plan on behalf of every employee performing work under this Master Agreement.   Contributions shall be made commencing with the first hour worked by any employee without regard to whether or not the employee is a member of the Union or whether or not the has seniority.   Contributions shall be made for all straight-time hours worked or paid for including holidays, vacations, jury duty, funeral leave, sick leave and paid personal leave.

The Employer rate of contribution shall be Fifty-three Dollars and Sixty-five Cents ($53.65) per month for each employee who has worked or been paid for all straight-time hours in the month for which contribution is due.   Employees who are not paid for all straight-time time hours in such month shall have contributions made on their behalf at a rate of Thirty-one Cents ($.031) per straight-time hour paid for in such month.

SECTION 17.   INSPECTION PRIVILEGES

Upon first having obtained the consent of the Employer or Management of the employee in every instance, the Business Agent or qualified representative of the Union may be allowed to talk with employees on the job for the purpose of ascertaining whether or not this Agreement is being observed by the parties hereto, or to assist in adjusting
grievances.   This privilege shall not be exercised so that no time is lost to employees unnecessarily.

SECTION 18.   HEALTH AND WELFARE DENTAL, VISION, DRUG, RETIREE INSURANCE PLANS AND LIFE INSURANCE

The Health and Welfare Plan known as Teamsters Local Union 856 Health and Welfare Fund (#6563) shall apply in full to employees under this Agreement.   The Employer shall pay the following rate per month per regular employee each month for each eligible employee.

Effective October 1, 1999, the Employers' rate of contribution into the Local 856 Medical Plan shall be increased from Four Hundred Sixty-three Dollars and Twenty cents ($463.20) to Four Hundred Ninety Dollars and Thirty cents ($490.30).

Effective October 1, 2000, and again October 1, 2001, if the Trustees of the Local 856 Medical Plan advise the Employers thirty (30) days in advance that it is necessary to increase the Employers' cost of maintaining the benefits then in effect, then, in that event, the Employers' costs can be increased up to Twenty-four Cents ($.24) per hour (each year) with the understanding that one-half of each such possible increase shall be diverted from the Employers' contribution into the Northern California Pension Plan.

This Section only of the Master Agreement may be amended to provide that said Agreement will automatically reopen for negotiations on Health and Welfare coverage only in the event that the State or Federal Government mandates State or National Care of Health Insurance.

SECTION 27.   FOUR (4) AND TEN (10) HOUR DAYS AND PART TIMERS

The Employers may implement individual weekly work schedules of four (4) day, ten (10) hours per day work weeks wit the understanding that employees so working will be paid forty (40) straight-time hours per week plus an additional four (4) hours pay per week, and, with the further understanding that overtime shall be paid at one and one-half (1½) times for hours worked in excess of ten (10) hours per day and two (2) times for hours worked in excess of twelve (12) hours per day. (e.g. an employee working four [4] ten hour days who works one [1] hour in excess of forty [40] hours would be paid forty-five and one-half [45 ½] hours that week).  Two (2) days of the three (3) days off would be consecutive.

The Employer may hire part-time employees provided, however, laid off employees will be offered part-time work before any new employee is hired to work part-time.

SECTION 28.   TERM OF AGREEMENT

This Master Agreement and Supplemental Agreements shall be in full force and effect from April 1, 1999 to including September 30, 2002.

This Master Agreement and Supplemental Agreements shall be considered renewed from year to year subsequent to the expiration date, unless either party hereto gives written notice to the other party of a desire to alter, modify, or change this Master Agreement and Supplemental Agreements.  Said notice shall be given at least sixty (60) days prior to the expiration hereof, and failure to give such notice shall be regarded as renewal thereof for the following contract year.

If either party is served with notice of a desire to change or modify this Master Agreement and Supplemental Agreements, negotiations must commence within fifteen (15) days of such notice.

IN WITNESS WHEREOF, the parties hereto have executed this Master Agreement and Supplemental Agreements this day and year first above written.

TERMINAL DEALERS ASSOCIATION

By: _____
Date: 6-22-00

FREIGHT CHECKERS, CLERICAL
EMPLOYEES & HELPERS UNION
LOCAL NO. 856, I.B.T.

By: _____
Date: 6-6-00

SAN FRANCISCO PRODUCE ASSOCIATION

By: _____
Date: 6-22-00

# CONTRACT

## BETWEEN

## SAN FRANCISCO PRODUCE ASSOCIATON

## AND

## TERMINAL DEALERS ASSOCIATION

## AND

## FREIGHT CHECKERS, CLERICAL EMPLOYEES AND HELPERS UNION LOCAL NO. 856 INTERNATIONAL BROTHERHOOD OF TEAMSTERS

### OCTOBER 1, 2002 through FEBRUARY 28, 2006

## SAN FRANCISCO MASTER PRODUCE LABOR AGREEMENT

This MASTER AGREEMENT is made and entered into by and between the SAN FRANCISCO PRODUCE ASSOCIATION and TERMINAL DEALERS ASSOCIATION, whose individual members party hereto are hereinafter set forth in the Appendix "A", and referred to as the "Employer", and FREIGHT CHECKERS, CLERICAL EMPLOYEES AND HELPERS UNION, LOCAL 856, I.B.T. hereinafter referred to as the "Union".

SECTION 1.   RECOGNITION AND HIRING

1.1   **Recognition:** The Employer recognizes the Union as the exclusive representative of the employees covered by this Master Agreement for collective bargaining. As a condition of employment, after thirty (30) days from the effective date of this Agreement or after thirty (30) days from the date an employee is hired, whichever is later, all employees covered by this Master Agreement shall be required to become and remain members of the Union in good standing. The Union agrees that written notice shall be given to the Employer at least seventy-two (72) hours before any employee is required to be removed from his employment by reason of his failure to become or remain a member of the Union as required by this Section.

1.2   **Hiring New Employees:** The Employer shall give the Union equal opportunity with all other sources to refer suitable applicants for employment, but the Employer shall not be required to hire those referred by the Union or any other particular source.

1.3   **Preference In Hiring:** The Employer shall give preference of employment to applicants who have been previously employed in this industry. However applicants so employed shall be on probation during the first three (3) months of work and may be subject to discharge during this period without recourse. No applicant will be preferred or discriminated against by the Employer because of membership or non-membership in the Union.

1.4   **Notification to the Union:** The following information will be given in writing by the Employer to the Union within seven (7) days from the date of hiring new employees: (1) Name, home address and social security number of employee; (2) date employed and hourly rate of pay.

SECTION 2.   SUPPLEMENTAL AGREEMENTS

The attached Supplemental Agreements are subject to and controlled by the terms of this Master Agreement and are referred to herein as "Supplemental Agreements" referred to as Supplemental Agreement No. 1 (OFFICE-CLERICAL), Supplemental Agreement No.2 (STREET SALESMEN, PORTERS, STREET CASHIERS AND INVOICE CLERKS), and Supplemental Agreement No. 3 (DRIVERS AND FORKLIFT OPERATORS).

SECTION 3.   REGULAR RATES OF PAY

See Supplemental Agreements attached to and make part of this Agreement. Also see **Addendum "W"** attached hereto and made part hereof.

SECTION 4.   WORK IN DIFFERENT CLASSIFICATIONS

The rate of pay for employees regularly engaged in more than one specified classification group shall be the average rate of the groups in which work is performed; provided, however, that an employee must work on an average of more than one (1) hour per day in a given classification in order that such classification be used in the computation of the combined rate. If an employee

The Union shall, upon request of the Administrator, be provided with monthly copies of Employer remittance statements in order to verify proper contributions.

16.1 <u>Strikes:</u> Except for where it is proven that an Employer is over sixty (60) days delinquent in pension and /or health and welfare contributions, the Union shall not cause or condone any strike by any of its members against any Employer covered by this Master Agreement.

16.2 <u>Supplemental Pension:</u> Each Employer party to this Master Agreement shall make contributions into the Northern California Pension Plan on behalf of every employee performing work under this Master Agreement. Contributions shall be made commencing with the first hour worked by any employee without regard to whether or not the employee is a member of the Union or whether or not the has seniority. Contributions shall be made for all straight-time hours worked or paid for including holidays, vacations, jury duty, funeral leave, sick leave and paid personal leave.

The Employer rate of contribution shall be Thirty-two Dollars and Eighty-eight Cents ($32.88) per month for each employee who has worked or been paid for all straight-time hours in the month for which contribution is due. Employees who are not paid for all straight-time time hours in such month shall have contributions made on their behalf at a rate of Nineteen Cents ($0.19) per straight-time hour paid for in such month.

## SECTION 17. INSPECTION PRIVILEGES

Upon first having obtained the consent of the Employer or Management of the employee in every instance, the Business Agent or qualified representative of the Union may be allowed to talk with employees on the job for the purpose of ascertaining whether or not this Agreement is being observed by the parties hereto, or to assist in adjusting grievances. This privilege shall be exercised so that no time is lost to employees unnecessarily.

## SECTION 18. HEALTH AND WELFARE DENTAL, VISION, DRUG, RETIREE INSURANCE PLANS AND LIFE INSURANCE

18.1 <u>Plan:</u> The Health and Welfare Plan known as Teamsters Local Union 856 Health and Welfare Fund (Plan E) shall apply in full to employees under this Agreement. The Employer shall pay the following rate per month per regular employee each month for each eligible employee.

Effective with the below hours, the Employer shall pay the below amounts on behalf of all eligible employees into the Teamsters Union Local 856 Medical Plan. The Employers rate of contribution of Five Hundred Thirty-one Dollars and Ninety Cents ($531.90) shall be increased to:

| October 2002 Hours | March 2004 Hours | March 2005 Hours |
|---|---|---|
| $677.10 | $787.79 | $898.08 |

This Section only of the Master Agreement may be amended to provide that said Agreement will automatically reopen for negotiations on Health and Welfare coverage only in the event that the State or Federal Government mandates State or National Care of Health Insurance; provided, however, in the event the Plan E medical benefits are changed or reduced by the Trustees, the Employer may open this Agreement to negotiate said benefits only by serving written notice on the Union. In that event, the Union and the Employer shall meet and negotiate within two (2) weeks of receipt of such notice which shall be by certified mail.

18.2 <u>Probationary Employees:</u> Effective March 2003, hours the Employer shall not be required to make contributions into the Teamsters Union Local 856 Health and Welfare Trust Fund for

hours worked during an employee's probationary period as defined in Section 6 of this Master Agreement.

SECTION 19. VACATIONS   (Applicable under Supplemental Agreements 1, 2 and 3)

19.1 <u>Vacation Benefits (For persons hired prior to 02/01/83):</u> Subject to the thirteen (13) day qualification period outlined below, employees with one (1) year and less than three (3) years of service with an Employer shall receive two (2) weeks (ten [10] working days) of vacation with pay each year. Pay for such two (2) week vacation shall be computed on the basis of ninety-six (96) hours at the straight-time rate of pay. Employees with three (3) years and less than ten (10) years of service shall receive three (3) weeks (fifteen [15] working days) of vacation pay each year. Pay for such three (3) week vacation shall be computed on the basis of one hundred thirty-five (135) hours at the straight-time rate of pay. Any employee who has ten (10) years of service or more, regardless of his anniversary date, shall receive four (4) weeks (twenty [20] working days) vacation with pay on the basis of one hundred eighty (180) hours at the straight-time rate of pay. Any employee who completes twenty (20) or more years of service shall receive five (5) weeks (twenty-five [25] working days) vacation with pay each year. Pay for such five (5) weeks of vacation shall be computed on the basis of two hundred twenty-five (225) hours at the straight-time rate of pay.

19.2 <u>Vacation Proration (for persons hired prior to 02/01/83):</u> Subject to the conditions set forth in the "Deferred Vacations" below, any employee laid off or terminated before the completion of one (1) year or during the first three (3) years of employment shall receive prorated vacation pay due on the basis of eight (8) straight-time hours for each month of employment. After three (3) years of employment, and up to ten (10) years of employment, prorated vacation pay shall be granted on the basis of eleven and one-quarter (11¼) straight-time hours pay for each month of employment. After ten (10) years of employment prorated vacation pay shall be granted on the basis of fifteen (15) straight-time hours for each month of employment. After completing twenty (20) years of employment, prorated vacation pay shall be granted on the basis of eighteen and three-quarters (18¾) straight-time hours for each month of employment.

19.3 <u>Vacation Benefits (for persons hired after 02/01/83 and prior to 02/01/89):</u> Subject to the thirteen (13) day qualification period outlined below, employees with one (1) year and less than three (3) years of service with an Employer shall receive two (2) weeks (ten [10] working days) of vacation with pay each year. Pay for such two (2) weeks vacation shall be computed on the basis of eighty (80) hours at the straight-time rate of pay. Employees with three (3) years and less than ten (10) years of service shall receive three (3) weeks (fifteen [15] working days) of vacation with pay each year. Pay for such three (3) weeks of vacation shall be computed on the basis of one hundred twenty (120) hours at the straight-time rate of pay. Any employee who has ten (10) years of service or more, regardless of his anniversary date, shall receive four (4) weeks of vacation (twenty [20] working days) vacation with pay each year. Pay for such four (4) weeks of vacation shall be computed on the basis of one hundred sixty (160) hours at the straight-time rate of pay. Any employee who completes twenty (20) or more years of service shall receive five (5) weeks (twenty-five [25] working days) vacation with pay each year. Pay for such five (5) weeks of vacation shall be computed on the basis of two hundred (200) hours at the straight-time rate of pay.

19.4 <u>Vacation Proration (For persons hired after 02/01/83 and prior to 02/01/89):</u> Subject to the conditions set forth in this Section, any employee laid off or terminated before the completion of one (1) year or during the first three (3) years of employment shall receive prorated vacation pay due on the basis of six and two-thirds (6 2/3) straight-time hours for each month of work. After three (3) years of employment and up to ten (10) years of employment, prorated vacation pay shall be granted on the basis of ten (10) straight-time hours pay for each month of employment. After ten (10) years of employment, prorated vacation pay shall be granted on the basis of thirteen and one-third (13 1/3) straight-time hours pay for each month of employment.

SECTION 28. TERM OF AGREEMENT

    This Master Agreement and Supplemental Agreements shall be in full force and effect from October 1, 2002 to including February 28, 2006.

    This Master Agreement and Supplemental Agreements shall be considered renewed from year to year subsequent to the expiration date, unless either party hereto gives written notice to the other party of a desire to alter, modify, or change this Master Agreement and Supplemental Agreements. Said notice shall be given at least sixty (60) days prior to the expiration hereof, and failure to give such notice shall be regarded as renewal thereof for the following contract year.

    If either party is served with notice of a desire to change or modify this Master Agreement and Supplemental Agreements, negotiations must commence within fifteen (15) days of such notice.

    IN WITNESS WHEREOF, the parties hereto have executed this Master Agreement and Supplemental Agreements on the below dates:

TERMINAL DEALERS ASSOCIATION

By: _____

Date: 8-25-03

SAN FRANCISCO PRODUCE ASSOCIATION

By: _____

Date: 8-21-03

FREIGHT CHECKERS, CLERICAL EMPLOYEES & HELPERS UNION LOCAL NO. 856, I.B.T.

By: _____

Date: 6-17-03